IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEST MEDICAL INTERNATIONAL, INC., <br> Plaintiff, <br> <br> v <br> <br> ACCURAY, INC., *a corporation*, ROBERT HILL, <br> DAVID SPELLMAN, JOHN DAVID SCHERCH <br> and MARCUS BITTMAN, <br> Defendants. | ) <br> ) <br> ) <br> ) 2:10-cv-1043 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 37). The motion has been thoroughly briefed by the parties (Document Nos. 38, 39, 43) and is ripe for disposition. The Court has not considered the Declaration of Derek Bertocci submitted by Defendants, as consideration of such is not appropriate at the motion to dismiss stage.

Factual and Procedural Background

Plaintiff Best Medical International, Inc. ("BMI") has alleged a variety of patent infringement claims against a corporation, Accuray, Inc. ("Accuray"), and four former BMI employees, Robert Hill, David Spellman, John David Scherch and Marcus Bittman (collectively, the "Individual Defendants"). In a nutshell, Plaintiff contends that the Individual Defendants used confidential and trade secret information of BMI to help Accuray develop a new cancer treatment system, the CyberKnife VSI System, which allegedly infringes three of BMI's patents. The parties are embroiled in separate litigation regarding BMI's trade secret claims.

1

On December 2, 2010, the Court issued a Memorandum Opinion and Order which granted Defendants' motion to dismiss the original Complaint filed by BMI in this case. The Court granted BMI leave to file an Amended Complaint, but recited several shortcomings identified by Defendants and cautioned: "If Plaintiff chooses to file an amended complaint, it will be important to address these alleged shortcomings as well, to assure that the amended complaint contains sufficient factual allegations to render the claim(s) 'plausible' as to ***each*** Defendant in compliance with the pleading standard set forth in *Twombly* and *Iqbal*." (Emphasis added).

On December 16, 2010, BMI filed a 46-page, thirteen-count Amended Complaint. BMI now alleges infringement by Defendants of three patents which it obtained through its acquisition of the assets of NOMOS Corporation in 2007. BMI alleges that it owns and continues to commercially market the patented technologies. Amended Complaint ¶ 26. Plaintiff further alleges that all products offered for sale under the patents contain appropriate patent markings and that it has provided appropriate notice of the alleged infringement to Defendants.

United States Patent No. 5,596, 619 (the "'619 Patent") describes a method and apparatus for conformal radiation therapy, with a radiation beam having a pre-determined, constant beam intensity, treats the entire tumor volume of a patient's tumor, and the beam intensity of the radiation beam is spatially modulated across the tumor, by separating the radiation into a plurality of treatment beam segments and independently modulating the beam intensity of the plurality of radiation beam segments. Amended Complaint ¶ 9. This technology is generally referred to in the oncological community as Intensity Modulated Radiation Therapy ("IMRT"). Because the intensity of the radiation in IMRT can be shaped to approximate the shape of the

tumor, an increased dose of radiation can be delivered to the tumor while sparing the adjoining normal tissue.

United States Patent No. 7,266,175 (the "'175 Patent") describes a method and apparatus for controlling the correlation between the factors of treatment plan efficiency and dosimetric fitness to optimize the radiation therapy, or radiotherapy plan, including providing user control of the segment count, user control of total monitor units, and selection of an optimization algorithm as a method of controlling treatment efficiency. Amended Complaint ¶ 12.

United States Patent No. 6,038,283 (the "'283 Patent") describes a method and apparatus for determining an optimized radiation beam arrangement for applying radiation to a tumor target volume while minimizing radiation of a structure volume in a patient, which uses an iterative cost function based on a comparison of desired partial volume data, which may be represented by cumulative dose volume histograms and proposed partial volume data, which may be represented by cumulative dose volume histograms for target tumors and tissue structures for delivery of the optimized radiation beam arrangement to the patient by a conformal radiation therapy apparatus. Amended Complaint ¶ 14. The '619, '175 and '283 Patents are attached as exhibits to the Amended Complaint.

The Court's December 2, 2010 Memorandum Opinion expressly notified BMI that it must allege facts regarding each Defendant's alleged improper conduct. Nevertheless, the Amended Complaint continues to reference all of the Individual Defendants as an undifferentiated group. *See, e.g.* Amended Complaint ¶¶ 29-35 (referring to "Defendants Hill, Spellman, Scherch, and Bittman"). The Amended Complaint conclusorily alleges that the Individual Defendants, collectively, improperly downloaded confidential, proprietary information of BMI; induced infringement of the BMI patents by Accuray; directly infringed

BMI's patents; and contributorily infringed BMI's patents. The Amended Complaint is silent as to the alleged conduct undertaken by each specific Individual Defendant. The only distinction the Court can discern from the Amended Complaint is that Hill apparently resigned from his employment with BMI earlier than the other Individual Defendants. Amended Complaint ¶ 17-18.

There are three other pending lawsuits between these parties. In Civil Action No. 07-1709, Hill sued BMI for benefits allegedly due at the time of his employment termination and BMI counterclaimed regarding his alleged misappropriation of confidential and trade secret information. In Civil Action No. 08-1404, BMI sued the four Individual Defendants for conversion and theft of trade secrets. In Civil Action No. 09-1194, BMI sued Accuray and the Individual Defendants, alleging a conspiracy to steal its confidential and trade secret information. These cases have been consolidated and are currently pending before Judge William Standish of this Court.

Defendants have renewed their motion to dismiss the Amended Complaint for failure to state a valid claim. Notably, Defendants do not seek dismissal of Count 1 (direct infringement of the '619 patent by Accuray) or Count 9 (direct infringement of the '283 patent by Accuray)[1] and they have not renewed their motion to transfer this case to United States District Court for the Northern District of California. Defendants do seek to dismiss all claims asserted by BMI against the Individual Defendants.

Defendants move for dismissal of the following claims: Count 2 (vs. Accuray - contributory infringement of the '619 Patent); Count 3 (vs. Individual Defendants - inducing Accuray to infringe the '619 Patent); Count 4 (vs. Individual Defendants - direct infringement of

---

[1] Defendants do seek dismissal of the claims for "willful" infringement.

4

the '619 Patent); Count 5 (vs. Individual Defendants - contributory infringement of the '619 Patent); Count 6 (vs. Accuray - inducing the Individual Defendants to infringe the '619 Patent); Count 7 (vs. Accuray - contributory infringement of the '175 Patent); Count 8 (vs. Individual Defendants - inducing Accuray to infringe the '175 Patent); Count 10 (vs. Accuray - contributory infringement of the '283 Patent); Count 11 (vs. Individual Defendants - inducing Accuray to infringe the '283 Patent); Count 12 (vs. Individual Defendants - direct infringement of the '283 Patent); and Count 13 (vs. Accuray - inducing the Individual Defendants to infringe the '283 Patent).

Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiently of the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (207) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a

5

motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. at 211 (citing *Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted).

Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly*, 550 U.S. at 553). The "plausibility" standard does not become a "probability" standard in complex cases. *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

The Appendix to the Federal Rules of Civil Procedure contains Form 18, which provides a template for a complaint of patent infringement. Form 18 consists of only four paragraphs, which set forth: (1) a statement of jurisdiction; (2) an identification of the patent at issue and an assertion of ownership; (3) an assertion and description of how Defendant is infringing the patent; and (4) an assertion that Plaintiff has complied with the statutory notice requirements and has given Defendant written notice of the infringement. Form 18 also contains an abbreviated demand for injunctive relief and damages. In *McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1357 (Fed.Cir.2007) (*citing Twombly*, 550 U.S. at 565 n. 10), the Federal Circuit Court of Appeals held that Form 18 complies with the *Twombly* pleading standard for a direct infringement claim. *Accord Xpoint Technologies, Inc. v. Microsoft Corp.,* 2010 WL 3187025 *2 (D. Del. 2010). *McZeal* was decided prior to *Iqbal*, and involved a pro se plaintiff. Moreover, Form 18 has not been updated or revised post-*Iqbal*. Nevertheless, the Court is mindful that to state a claim, "a patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend." *Id.* The Court notes that neither party has objected to this standard of review, as set forth in the December 2, 2010 Memorandum Opinion.

Legal Analysis

According to BMI, this is a simple case: Defendants allegedly colluded to have the Individual Defendants steal BMI's patented technology and sell it to Accuray in exchange for employment. BMI contends that the Individual Defendants gained access to its patented information solely as a result of their prior employment with BMI. Defendants allegedly then colluded to use the purloined technology to develop and sell the infringing CyberKnife VSI product. Defendants vigorously respond that the allegations in this case fail to state valid claims for patent infringement and are merely a creative effort by BMI to "dress up" the trade secret claims which are pending before Judge Standish. Defendants also reason that, by definition, BMI's patented information was publicly available and therefore could not be stolen or sold.

The claims set forth in the Amended Complaint are somewhat complicated and overlapping. Plaintiff asserts three different legal theories: (1) direct infringement; (2) induced infringement; and (3) contributory infringement.[2] There are two groups of defendants: Accuray; and the four individual former BMI employees. Finally, there are three patents at issue, on which BMI asserts similar claims of infringement. To avoid excessive repetition, the Court has combined its discussion of claims that raise similar legal issues.

A. Summary of the Prima Facie Cases

A cause of action for "direct" infringement arises under 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention

---

[2] BMI has apparently abandoned the aiding and abetting infringement theory which it advanced in the original Complaint.

within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In *Xpoint Technologies*, 2010 WL 3187025, the Court relied on Form 18 to set forth the elements of a direct infringement claim as follows: "(1) an allegation of jurisdiction; (2) a statement that plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by 'making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages." *Id.* at *2; *Accord McZeal*, 501 F.3d at 1357.

Induced infringement claims are governed by 35 U.S.C. § 271(b), which states: "Whoever actively induces infringement of a patent shall be liable as an infringer." There are four necessary elements of a prima facie case of induced infringement: (1) there was direct infringement by the induced party; (2) the inducer had knowledge of the asserted patents; (3) the inducer "possessed specific intent [and] not merely . . . knowledge of the acts alleged" to induce; and (4) there was active inducement of the direct infringer. *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, 348 F. Supp.2d 316, 323 (D. Del. 2004) (citing *Ferguson Beauregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003)). Claims for induced infringement cannot exist in the absence of direct infringement. *Mallinckrodt, Inc. v. E-Z-Em Inc.,* 670 F.Supp.2d 349, 353 (D. Del. 2009) (*citing Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004)). In order to prevail on an induced infringement claim under § 271(b), a plaintiff must first demonstrate direct infringement, and then establish that the "defendant possessed the requisite knowledge or intent to be held vicariously liable." *Id.*

Contributory infringement claims are based on 35 U.S.C. § 271(c), which defines "contributory infringement" narrowly, to refer to the sale or importation of a component to be made or adapted for use in an infringement of a patent; or "a material or apparatus for use in

9

practicing a patented process, constituting a material part of the invention." *See PharmStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1357-58 (Fed. Cir. 2007). *See also Oxford Gene Tech. Ltd. V. Mergen Ltd.*, 345 F. Supp.2d 444, 465 (D. Del. 2004) (listing elements of "contributory infringement" claim). Contributory infringement requires the sale of a product of some sort -- the provision of a service does not suffice. *Id*. Moreover, the alleged contributory infringement must contribute to an underlying act of direct infringement. *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1303 (Fed. Cir. 2006).

B. Failure to Plead Facts Regarding the Conduct of Each Individual Defendant

As an initial matter, the Amended Complaint fails to allege facts to support any cognizable claims against any of the Individual Defendants. Despite the Court's prior admonition, BMI has failed to plead any facts which reflect the actual conduct in which any Individual Defendant engaged. Rather, the Amended Complaint contains only generic, conclusory references to all of the Individual Defendants as a group. This shortcoming is particularly problematic in this case. As noted above, all of the named parties are currently embroiled in other litigation which involves misappropriation of trade secret claims. Nevertheless, the Amended Complaint fails to demonstrate why one (or more) of the Individual Defendants should also be a party in this patent infringement case. In sum, the Amended Complaint fails to give each Individual Defendant notice of the misconduct with which each is charged and fails to enable the Court to evaluate the patent claims against each person. *Accord Menkowitz v. Pottstown Memorial Medical Center*, 1999 WL 410362 *3 (E.D. Pa. 1999) (granting motion to dismiss claims based on general allegations against a group of individuals).

C. Direct Infringement Claims Against the Individual Defendants

Even assuming, arguendo, that the Amended Complaint were sufficiently precise and detailed, the claims asserted against the Individual Defendants fail on the merits. Defendants contend that BMI cannot allege that the Individual Defendants sold or offered for sale the "patented invention." Defendants also contend that the alleged disclosure of confidential and trade secret information cannot, by definition, be a patent infringement claim because the subject matter of a patent is required to be public, and thus, cannot be "confidential" or "secret." The Court agrees and concludes that the Amended Complaint fails to allege a cognizable claim of direct infringement by any of the Individual Defendants.

To constitute direct infringement under Section 271(a), there must be a use or sale of a "patented invention." In other words, there must be an accused device or product that infringes the patent. *See, e.g., McZeal*, 501 F.3d at 1357 (prima facie case requires allegation that defendant is making, selling and using "the device" embodying the patent). For the claims against the Individual Defendants, the "patented invention" cannot be the CyberKnife VSI System. The Amended Complaint clearly alleges that only Accuray (and not the Individual Defendants) is "manufacturing, selling and/or offering for sale the CyberKnife VSI System." Amended Complaint ¶ 39. The Amended Complaint does not plead a plausible basis for piercing the corporate veil. *Hoover Group, Inc. v. Custom Metalcraft, Inc*., 84 F.3d 1408, 1411-12 (Fed. Cir. 1996). Indeed, BMI forthrightly acknowledges that sale of the CyberKnife System forms the basis for its direct infringement claim against Accuray, not the Individual Defendants. Plaintiff's Brief at 11.

Plaintiff clarifies that its direct infringement theory against the Individual Defendants is that they sold "Plaintiff's stolen material that fully described the Plaintiff's patented product to Accuray." Plaintiff's Brief at 11. BMI attempts to equate the materials allegedly downloaded with the "patented device" and contends that the "sale of such material [ ] occurred through the employment" of the Individual Defendants by Accuray. Amended Complaint ¶ 72; *See also* Amended Complaint ¶¶ 118-120 (articulating a substantially identical theory as to the Individual Defendants' alleged direct infringement of the '283 Patent). The only conduct of the Individual Defendants pleaded in the Amended Complaint is that they allegedly downloaded from BMI's computers confidential, trade secret information which described the patented processes and then offered those materials to Accuray in exchange for employment. Amended Complaint ¶¶ 67-71. In other words, the Individual Defendants are not alleged to have sold an actual device or product, but rather, only information that described a patented product. The Court concludes that such conduct does not constitute direct patent infringement under the facts and circumstances as alleged in the Amended Complaint.

An additional flaw in the theory of BMI is that the "confidential" or "trade secret" information allegedly downloaded by the Individual Defendants cannot be equivalent to the "patented device." The information necessary for one skilled in the art to make and use the claimed patented invention is required by law to be fully, clearly, concisely and exactly described and disclosed in the patent application. 35 U.S.C. § 112. Similarly, the "best mode contemplated by the inventor of carrying out his invention" must also be disclosed. *Id*. By definition, patented information cannot be a trade secret. *See Resonance Technology, Inc. v. Koninklijke Philips Electronics, N.V.*, 2008 WL 4330288 (C.D. Cal. 2008) (citing *Henry Hope X-Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1342 (9th Cir.1982) ("Matters disclosed

12

in a patent publication destroy any trade secret contained therein.") If the information that the Individual Defendants allegedly sold to Accuray was indeed equivalent to the "patented device," then Plaintiff's theory is completely implausible because such information was already publicly available to Accuray (and any other interested party) in the patents. On the other hand, if the alleged improperly downloaded information was different from that disclosed in the patents, the Individual Defendants' alleged conduct might support a claim for misappropriation of trade secrets and/or a claim for breach of their respective non-compete agreements, but it cannot form the basis of a direct patent infringement claim. The Court notes that BMI has not cited a single case authority to support its novel direct infringement theory. Accordingly, Counts 4 and 12 of the Amended Complaint will be dismissed.

D. <u>Inducing Infringment and Contributory Infringement Claims vs. Individual Defendants</u>

The Amended Complaint fails to set forth sufficient factual allegations to render the inducing infringement and contributory infringement claims plausible. In Counts 3, 8 and 11, BMI conclusorily alleges that "[i]n actions both before and after they began employment with Accuray," the Individual Defendants induced Accuray to develop the CyberKnife VSI System in violation of the '619, '175 and '283 Patents, respectively.[3] The Amended Complaint does not aver what those "actions" might have been. In essence, BMI's theory is that but for the Individual Defendants alleged collusion to steal Plaintiff's technology and go to work for Accuray, there would have been no team assembled to build the CyberKnife VSI system. Similarly, there is no allegation of a specific intent by any of the Individual Defendants to induce Accuray to infringe BMI's patents.

---

[3] The Court notes that BMI has not asserted underlying direct infringement of the '175 Patent by Accuray.

Plaintiff has not pled sufficient facts in support of either of its "pre-employment" or "post-employment" theories of inducement. Plaintiff's Brief at 10. BMI has apparently abandoned its "pre-employment" theory. Its brief explains that "Hill's employment began with Defendant Accuray ***before*** he downloaded the information. . . ." Plaintiff's Brief at 8 (emphasis added). BMI has further explained that none of the Individual Defendants "ever stole software or other proprietary material prior to going to work for Defendant Accuray." *Id.* In other words, BMI's position apparently is that the Individual Defendants stole its trade secret information, but not until after they went to work for Accuray. There are no allegations regarding improper conduct by any of the Individual Defendants while they worked at BMI.

The "post-employment" theory fails because there is no basis to hold the Individual Defendants liable for work they performed in their capacities as employees of Accuray. The Amended Complaint does not allege that any of the Individual Defendants had the authority or ability to control the actions of Accuray. The Court is aware that corporate <u>officers</u> who actively aid and abet infringement by their corporation may be held liable for inducing infringement without piercing the corporate veil, *see, e.g., Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed. Cir. 1986), but this theory has not been extended to non-officer employees, even under a broad reading of § 271(b). BMI has neither cited such cases, nor has the Court found any such cases in its independent research. In *Mayo Clinic Jacksonville v. Alzheimer's Institute of America, Inc.,* 683 F.Supp.2d 1292, 1300 (M.D. Fla. 2009), the Court concluded that "no authority exists for holding an employee who is not an officer, director, or shareholder of a corporation liable for the corporation's patent infringement."

Further, although the Amended Complaint alleges generally that the Individual Defendants were instrumental in the design of the CyberKnife VSI System, and utilized

14

knowledge and materials obtained during their employment at BMI, it fails to allege that any of the Individual Defendants had a "specific intent" to induce infringement.  *See Koninklijke Philips Electronics N.V. v. The ADS Group*, 694 F.Supp.2d 246, 253 (S.D.N.Y. 2010) (dismissing inducement claim despite allegations that defendants personally, actively and knowingly controlled and directed the direct infringers in producing an infringing product, because it failed to allege that defendants acted "with the *specific intent* of inducing infringement, a necessary element of an inducement claim.") (Emphasis in original).  In sum, the alleged conduct of the Individual Defendants may support a misappropriation of trade secrets claim, but the Amended Complaint does not allege a cognizable claim for inducing infringement under the patent statute.

Count 5 fails to allege a valid claim of contributory infringement by the Individual Defendants.  Contributory infringement pursuant to § 271(c) requires the marketing of a "component" or a "material or apparatus" which constitutes a material part of the invention, in other words, a product of some sort -- the provision of a service does not suffice.  *PharmaStem*, 491 F.3d at 1357-58.  As explained above, the Amended Complaint alleges that the Individual Defendants provided only information, and not a product.   In addition, in Count 5 Plaintiff alleges infringement of only the "method" claims in the '619 Patent, and not the apparatus claims.  As Defendants point out, there is no allegation that Accuray performs the method of the '619 Patent (i.e., conformal radiation therapy) which can only be performed by licensed healthcare providers.  Thus, there is no underlying direct infringement to which the Individual Defendants may contribute.

In sum, the Amended Complaint fails to adequately plead the necessary facts to render plausible any of the claims against any of the Individual Defendants, and the Court concludes

that such claims would not be viable in any event.  Accordingly, Counts 3, 4, 5, 8, 11 and 12 of the Amended Complaint will be dismissed.  The Individual Defendants will be dismissed as parties to this case and the caption will be amended accordingly.

    E.   <u>Inducing Infringement and Contributory Infringement Claims vs. Accuray</u>

It is well-established that claims for inducing infringement and contributory infringement pursuant to §§ 271(b) and (c) are dependent upon an underlying direct infringement.  For the reasons set forth above, the Amended Complaint fails to establish a claim of direct infringement by the Individual Defendants.  Therefore, Accuray cannot be held liable for inducing or contributing because there is no underlying direct infringement.  Accordingly, Counts 2, 6, 7, 10 and 13 must be dismissed for failure to state a claim.

    F.   <u>Claims for Willful Infringement</u>

Plaintiff alleges in Counts 1 and 9 that Accuray's direct infringement of the '619 and '283 Patents was "willful," such that it may recover treble damages.  In *In re Seagate Technology LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc), the Federal Circuit established a new standard for willful infringement which requires (1) "an objectively high likelihood that [ ] actions constituted infringement of a valid patent," and (2) the "objectively-defined risk . . . was either known or so obvious that it should have been known."  Willfulness is a fact-intensive issue that is difficult to resolve at the pleading stage.  *Milwaukee Elec. Tool Corp. v. Hitachi Koki, Ltd.*, 2011 WL 665439 (E.D. Wis. February 14, 2011); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.,* 684 F.Supp.2d 541, 544-45 (D. Del. 2010).   BMI has pled a plausible theory of willful infringement.  Accordingly, Accuray's motion to dismiss the willful

16

infringement allegations as to Counts 1 and 9 will be DENIED without prejudice to reassert, if appropriate, on a more fully-developed record.

G. Request for Sanctions

Defendants did not request sanctions in their motion to dismiss, proposed order, or initial brief. However, in their reply brief, Defendants contend that BMI's continued assertion of allegedly baseless claims, particularly against the Individual Defendants, "borders on litigation misconduct, for which sanctions may be warranted." The Court will not impose sanctions. Plaintiff has made non-frivolous arguments for extending and/or establishing new law with respect to patent infringement claims. *See* Federal Rule of Civil Procedure 11(b)(2). Plaintiff's claims are not barred by clearly-established binding precedent based on a similar fact-pattern. Indeed, Defendants did not seek dismissal of two of the counts in the Amended Complaint. In sum, sanctions are not warranted.

H. Leave to Amend Complaint

Defendants again request that the claims be dismissed with prejudice. If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Plaintiff has had an opportunity to amend its complaint. Two causes of action are proceeding, as are the consolidated cases before Judge Standish. Moreover, a third bite at the apple would be inequitable and/or futile. Many of the flaws in BMI's claims against the Individual Defendants were articulated in the motion to dismiss the original Complaint and Plaintiff has been apparently

17

unable or unwilling to satisfactorily address those flaws. Accordingly, Counts 2-8 and 10-13 of the Amended Complaint will be dismissed with prejudice.

In accordance with the foregoing, DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 37) will be **GRANTED IN PART AND DENIED IN PART**. Counts 2-8 and 10-13 of the Amended Complaint will be dismissed with prejudice and the Individual Defendants will be dismissed as parties. The caption will be amended accordingly. Defendant Accuray's motion to dismiss the allegations of willfulness as to Counts 1 and 9 will be **DENIED**. Defendants' request for sanctions will be **DENIED**.

The sole remaining Defendant, Accuray, will be required to file an Answer to Counts 1 and 9 of the Amended Complaint on or before March 21, 2011.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEST MEDICAL INTERNATIONAL, INC.,<br>          Plaintiff,<br><br>          v<br><br>ACCURAY, INC., *a corporation*, ROBERT HILL,<br>DAVID SPELLMAN, JOHN DAVID SCHERCH<br>and MARCUS BITTMAN,<br>          Defendants. | )<br>)<br>)<br>)  2:10-cv-1043<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 9th day of March, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) (Document No. 37) is **GRANTED IN PART AND DENIED IN PART:** Counts 2-8 and 10-13 of the Amended Complaint are **DISMISSED WITH PREJUDICE;** Defendant Accuray's motion to dismiss the allegations of willfulness as to Counts 1 and 9 is **DENIED;** and Defendants' request for sanctions is **DENIED**.

Accuray shall file an Answer to Counts 1 and 9 of the Amended Complaint on or before March 21, 2011.

Defendants Hill, Spellman, Scherch and Bittman are hereby DISMISSED as parties.

The caption is amended as follows:

| | |
|---|---|
| **BEST MEDICAL INTERNATIONAL, INC.,**<br>　　　　　　　　**Plaintiff,**<br><br>　　　　　　　v<br><br>**ACCURAY, INC.**, *a corporation*,<br>　　　　　　　　**Defendant.** | )<br>)<br>)<br>) **2:10-cv-1043**<br>)<br>)<br>) |

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Brit D. Groom, Esquire**
　　　Email: bgroom@teambest.com

　　　**Kirsten R. Rydstrom, Esquire**
　　　Email: krydstrom@reedsmith.com
　　　**Janice A. Christensen, Esquire**
　　　Email: janice.christensen@alston.com
　　　**Jennifer Liu, Esquire**
　　　Email: celine.liu@alston.com
　　　**Madison C. Jellins, Esquire**
　　　Email: madison.jellins@alston.com