## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BEST MEDICAL INTERNATIONAL, INC.,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **2:10-cv-1043-TFM** |
| | ) | |
| **v.** | ) | **Filed Electronically** |
| | ) | |
| **ACCURAY, INC.,** | ) | |
| | ) | |
| **DEFENDANT.** | | |

## MOTION FOR PROTECTIVE ORDER REGARDING ACCURAY'S FIRST SET OF REQUESTS FOR ADMISSIONS (NOS. 1-106)

Best Medical International, Inc. ("Best Medical"), pursuant to Fed. R. Civ. P. 26(c) submits this Motion for Protective Order regarding Accuray's First Set of Requests for Admissions (Nos. 1-106), for good cause, to protect Best Medical from harassment, annoyance, oppression, undue burden and unwarranted expense, as set forth below. In the alternative, Best Medical respectfully requests an extension of time to respond to Accuray's 106 Requests for Admission.

## FACTUAL BACKGROUND

1.      As the Court has noted in prior opinions, this is an extremely contentious case.

2.      Regardless, on Monday, March 25, 2013, the parties met at the offices of the Honorable Donald Ziegler and participated in a mediation session as required by the Local ADR Rules and the Order scheduling mediation in this case. See Dkt. No. 170.

3.      While the parties did make significant progress towards resolution of this case, the case was not settled.

4.      However, during the mediation, it was agreed that the parties would reconvene the mediation on Thursday, May 16, 2013.[1]

5.      Prior to the March 25, 2013 mediation, counsel for the parties had agreed to refrain from initiating discovery or filing dispositive motions until after the mediation was completed.

6.      To date, the only discovery has been the exchange of initial disclosures by the parties.

7.      Fact discovery beyond the initial disclosures has not begun in this case because the parties have been focusing on the claim construction process and ADR process as contemplated by the Local Civil Rules, the Local Patent Rules and the various scheduling orders in this case.

8.      Regardless, on Tuesday, March 26, the day after the parties agreed to continue the mediation process, counsel for Accuray served on counsel for Best Medical a First Request for Admissions, containing 106 requests for admissions.

<u>OBJECTIONS TO ACCURAY'S 106 REQUESTS FOR ADMISSIONS</u>

A.      **The Number of Requests**

9.      While neither the Federal Rules of Civil Procedure nor the local civil rules of this Court limit the number of requests for admissions which may be served, the sheer number of the requests for admissions served by Accuray in this case is outside the spirit if not the letter of the Rules of Civil Procedure, and this Court's Local Rules.

---

[1]   Part of this delay was at the request of lead counsel for Best Medical, who has been ordered in another case pending in the Western District of PA, to participate in "depositions to begin 04/01/13 unless otherwise agreed, continuing each day until completed, unless otherwise agreed, to be concluded no later than 04/29/13." See <u>Calfrac Well Services Ltd., et al. v. Self</u>, 12-cv-1260-AJS, Hearing Memo of March 5, 2013 (Doc. No. 72).

10.     For example, parties are limited to twenty (25) interrogatories under Rule 33; parties are limited to ten (10) depositions under Rule 30(a)(2)(A)(i); and each deposition is limited to no more than one (1) day of seven (7) hours pursuant to Rule 30(d)(1).

11.     Such limitations have been deemed necessary to prevent expensive, abusive, burdensome and protracted discovery being used for tactical or abusive purposes rather than the purposes contemplated under the Federal Rules of Civil Procedure.

12.     Just by the sheer number of requests, it is clear that Accuray is attempting to employ such a strategy.

**B.     The Timing of the Requests**

13.     Furthermore, the timing of Accuray's service of these requests for admissions is also suspect, due to the fact that responding to these requests, even if they were legitimate, would occupy a large majority of the time between the date of service and the next mediation, despite the fact that Accuray is fully aware of counsel's obligations as ordered by Judge Schwab in the *Calfrac* case.  This obligation was explained to counsel for Accuray during the mediation.

14.     As referenced above, counsel agreed to refrain from engaging in discovery until the mediation was complete.  The mediation is not complete, because a second day has been scheduled.

15.     However, at the end of the mediation, telegraphing its intent to serve voluminous discovery requests despite to prior agreement to continue the mediation, counsel for Accuray inquired from the mediator as to the impact on the case management schedule relating to the second mediation, and Judge Ziegler indicated that he had no control over the schedule and that the parties were free to engage in discovery.

16.     Counsel for Accuray has seized upon this statement of the mediator in order to engage in suspect discovery tactics.

17.     In addition to the above, Best Medical is unable to adequately respond to many of Accuray's Requests for Admission, because Best Medical is not in possession of sufficient discovery from Accuray to make admissions regarding Accuray's accused device.

18.     As set forth in the lengthy briefing process related to Best Medical's infringement contentions, Accuray has designated over 1,500 pages of its initial disclosure documents as "Highly Confidential – Source Code."   However, these documents contain very little actual source code and include manuals merely describing software, not containing the actual software source code.

19.     Accuray has not, to date, provided sufficient documents at this time identifying the specific complex algorithms and underlying source code utilized by Accuray in its CyberKnife MultiPlan® Treatment Planning System.

20.     Absent further discovery, Best Medical cannot adequately respond to Accuray's numerous requests for admission.

21.     Accordingly, due to the fact that discovery has not yet begun in earnest, and the pending second mediation session, Best Medical should not be compelled to respond to Accuray's Requests at this time.

C.     **The Nature of the Requests**

22.     In addition to the number of requests for admissions and the timing of the service of the requests, a large number of the requests for admissions are objectionable, as can be seen from a cursory review of the 106 requests.  A copy is attached hereto as Exhibit 1.

**Legal Standard**

23.     Rule 36 limits the scope of requests to admit to only "facts, the application of law to fact, or opinions about either; and the genuineness of any described documents."  F. R. Civ. P. 36(a)(1)(A) and (B).

24.     Rule 36 was not designed as a substitute for trial, but instead was intended to serve the very limited purpose of addressing *uncontroverted* facts.   See *Sowell v. Butcher & singer, Inc.*, 926 F.2d 289, 300 (3d Cir. 1991).

25.     "Rule 36 is not a discovery device, but rather 'a procedure for obtaining admissions for the record facts already known.'"  *Id*.

26.     Requests for Admissions should be phrased so that they can be admitted or denied with minimal explanation.  *United Coal Companies v. Powell Construction Company*, 839 F.2d 958, 967 (3 D. Cir. 1998), quoting *Havenfield Corp. v. H&R Block, Inc.*, 67 F.R.D. 93, 96 (W. D. Mo. 1973).

27.     A party is not required to respond to a request that contains vague or ambiguous statements.  *Fulhorst v. United Technologies Automotive, Inc.*, 197 W.L. 873548 at *1 (D. Del. 1997), citing *Dubin v. E.F. Hutton*, 125 F.R.D. 372, 375-76 (S.D. N.Y. 1989); Moore's Federal Practice § 36.10[6] (3d. ed. 1997).

28.     Although Requests for Admission may relate to statements or opinions of fact or the application of law to fact, requests that seek legal conclusions are not appropriate under Rule 36.  *Id.* at *2.

**Vague requests**

29.    A number of the Requests are vague in that they seek admissions regarding general algorithms and are not defined.

30.    Some examples of these vague Requests are set forth below:

- 7.    Admit that stochastic algorithms search the solution space randomly.
- 8.    Admit that the simulated annealing optimization algorithm searches the solution space randomly.
- 9.    Admit that stochastic algorithms proceed iteratively from one proposed solution to the next.
- 10.    Admit that the simulated annealing algorithm proceeds iteratively from one proposed solution to the next.
- 11.    Admit that in each iteration of a stochastic algorithm, the cost of the new proposed solution at the current iteration is compared to the cost of the accepted solution at the previous iteration.
- 12.    Admit that in each iteration of the simulated annealing algorithm, the cost of the new proposed solution at the current iteration is compared to the cost of the accepted solution at the previous iteration.
- 13.    Admit that stochastic algorithms generate a sequence of solutions that converge to the optimum solution.
- 14.    Admit that the simulated annealing algorithm generates a sequence of solutions that converge to the optimum solution.
- 15.    Admit that, in each iteration, the simulated annealing optimization algorithm adds or subtracts a small amount of beam weight to a beam element.
- 16.    Admit that, in each iteration, stochastic algorithms accept the cost of the current proposed solution if it is smaller than the cost of the previous accepted solution .
- 17.    Admit that, in each iteration, the simulated annealing optimization algorithm accepts the cost of the current proposed solution if it is smaller than the cost of the previous accepted solution.
- 18.    Admit that, in each iteration, stochastic algorithms reject the cost of the current proposed solution if it is greater than the cost of the previous accepted solution.
- 19.    Admit that, in each iteration, the simulated annealing algorithm rejects the cost of the current proposed solution if it is greater than the cost of the previous accepted solution.
- 24.    Admit that linear optimization algorithms do not search the solution space randomly.
- 30.    Admit that linear cost functions have a linear relationship between the cost and the variables.

- 31.   Admit that non-linear cost functions do not have a linear relationship between the cost and the variables.
- 36.   Admit that when a cost function is non-linear, it is susceptible to multiple solutions within the solution space.
- 37.   Admit that the simulated annealing optimization algorithm generates solutions by using a probability function to randomly select step size and direction from one potential solution to the next.
- 38.   Admit that linear optimization algorithms do not generate solutions by using a probability function to randomly select step size and direction from one potential solution to the next.
- 41.   Admit that the solution to an inverse radiation optimization problem is a set of beam weights.
- 42.   Admit that the solution to the radiation optimization problem described in the '283 patent is a set of beam weights.
- 50.   Admit that the beam reduction tool described at ACC0013861-0013862 is not part of the Simplex optimization algorithm.
- 51.   Admit that the beam reduction tool described at ACC0013861-0013862 is not part of the Iterative optimization algorithm.
- 52.   Admit that the beam reduction tool described at ACC0013861-0013862 is not part of the Sequential optimization algorithm.
- 55.   Admit that the Simplex optimization algorithm re-initializes all beam weights each time it is called (ACC0013839).
- 105.   Admit that the Peacock radiation treatment system was never commercialized.

31.   Accordingly, Best Medical should not be required to respond to Requests 7-19, 24, 30, 31, 36-38, 41, 42, 50-52, 55 and 105.

**Requests Directed to the Ultimate Legal Conclusions in this Case**

32.   Best Medical acknowledges that the line between facts and opinions relative to facts, as those terms are used in Rule 36, is a fine line.  However, courts have applied strict scrutiny to such requests, particularly in patent infringement cases.

33.   In *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Company, Inc.*, 130 F.R.D. 92, 96 (N.D. In. 1990), the United States District Court for the Northern District of Indiana considered the propriety of a request to admit the validity of certain patent claims.  The

court stated:  "whether a patent is valid calls for a legal conclusion although its answer may depend upon factual inquiries."  *Id.*

34.    In another patent case, *Naxon Telesign Corp. v. GTE Information Systems, Inc.*, 30 Fed. R. Serv. 2d 1286, 1287 (N.D. Ill. 1980), the defendant requested a plaintiff's admission that various elements disclosed in a related patent satisfied quoted language in the plaintiff's patent.  The District Court held that the request need not be answered, as it improperly sought "to obtain an admission of the ultimate legal conclusion in the case rather than admissions 'of fact or the application of law to fact.'"  *Id.*

35.    Similarly, in *Phillip N. Adams & Associates, LLC. v. Dell Inc.*, 2007 W.L. 128962 (D. Utah January 11, 2007), the defendant moved to compel responses to requests for admission which asked plaintiff to admit or deny that certain elements of one of the patents in suit are disclosed by a prior patent in suit.  The defendant characterized these requests as seeking "fact opinions" suitable for admissions, but the plaintiff claimed that the defendant was seeking to resolve legal issues.

36.    The Court in *Dell* stated that even though a request may be phrased to appear factual, if it encroaches on legal turf, or reaches the ultimate decision of the Court, the requests will be seen as seeking a legal conclusion and cannot be compelled.  *Id. at *2.*

37.    The Court in *Dell* also acknowledged that in patent litigation, issues of fact and law are layered and while the defendant was correct that its requests for admissions seek factual information, because that factual information rested on legal analysis (from plaintiff) and on legal conclusions of claim construction (from the Court) it was not the proper subject of a request for admission.  *Id.*

38.     Accuray in its requests is attempting to use the same tactic as the defendant in *Dell* -- that is, asking plaintiff to admit or deny that certain elements of a patent in suit are disclosed by a prior document.  See Exhibit 1, Requests 58-90.

39.     Requests 58-90 ask plaintiff to admit or deny that certain claim elements of the patent in suit are disclosed by a particular prior art document.

40.     By way of example:

- 58.     Admit that Webb 1989 discloses an apparatus for determining an optimized beam arrangement for applying radiation to a tumor target volume while minimizing radiation of a structure volume in a patient as those terms are used in the claims of the '283 patent.
- 59.     Admit that Webb 1989 discloses a computer adapted to computationally obtain a proposed radiation beam arrangement as those terms are used in the claims of the '283 patent.

                    *          *               *

- 90.     Admit that Mohan 1992 discloses obtaining an optimized radiation beam arrangement as those terms are used in the claims of the '283 patent.

41.     Accordingly, Best Medical should not be required to respond to Requests 58-90.

**Requests Directed to the Ultimate Legal Conclusions in this Case and/or Expert Opinion**

42.     Requests for admission calling for conclusions of law and relating to facts of the case are "properly objectionable" when they call "for a conclusion of one of the ultimate issues in the case."  See *McCarthy v. Darman*, Civil Action No. 07-cv-3958 (E.D.Pa. June 17, 2008), citing *Ghaxerian v. The United States of America*, No. 89-8900, 1991 W.L. 30764, at *2 (E.D.Pa. March 5, 1991).

43.      "It would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts."  *Id*., citing

*Disability Rights Council of Greater Washington Metropolitan Area Transit Auth.*, 234 F.R.D. 1, 1 (D.D.C. 2006).

44.     "Requests for admissions cannot be used to compel an admission of a conclusion of law. *Reliance Ins. Co. v. Marathon LeTourneau Co.,* 152 F.R.D. 524, 525 (S.D.W.Va.1994). In addition, the Advisory Committee Notes to the 1970 Amendment of Federal Rule of Civil Procedure 36 states that although an admission of a matter involving the application of law to fact may narrow the issues for trial, '**requests for admission involving the application of law to fact may create disputes between the parties which are best resolved in the presence of the judge after much or all of the other discovery has been completed**.'" *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D.Ca. 1999) (emphasis added).

45.     The following are but a few examples of the requests for admissions which seek a conclusion of law and/or the application the application of law to fact:

- 57.    Admit that the optimized radiation beam arrangement described and claimed in the '283 patent is a set of beam weights.
- 94.    Admit that the royalty base for a reasonable royalty in this case is limited to the MultiPlan® treatment planning system.
- 95.    Admit that the royalty base for a reasonable royalty in this case does not include the data management or treatment delivery components of the CyberKnife® system.
- 96.    Admit that the royalty base for a reasonable royalty in this case is limited to the treatment planning component of the CyberKnife® system.

46.     Accordingly, Best Medical should not be required to respond to Requests 57 and 94-96.

47.     As can be seen from even a cursory review of Accuray's Requests for Admissions, many relate to the subject of optimization algorithms, linear algorithms, simulated annealing algorithms, stochastic algorithms, and the like.

48.     While the parties are sophisticated and may understand these algorithms in great detail, opinions regarding these are clearly the subject of expert testimony, because they are well beyond the knowledge of the trier of fact in this case.  *See* F.R.E. 702.

49.     In addition to their expert nature, the Requests for Admissions regarding algorithms are not reasonably calculated to lead to the discovery of admissible evidence, in light of the Claim Construction Order entered by this Court.

50.     As set forth in that Order, and the Report and Recommendation of the Special Master incorporated therein, Claim 25 of the Patent-in-Suit is not limited to any particular algorithm, whether it be simulated annealing, linear, stochastic or otherwise.

51.     Similarly, the cost function associated with Claim 25 is not limited to the cost function set forth in column 13, lines 4-39 of the '283 Patent.

52.     Accordingly, Accuray's extensive Requests for Admissions regarding the differences between various algorithms is not reasonably calculated to lead to the discovery of admissible evidence, since the type of algorithm is not relevant to whether or not Accuray's accused CyberKnife MultiPlan® Treatment Planning System reads on the limitations of Claim 25, as that claim has been construed by this Court.

53.     Below are but a few of the examples in which, in addition to seeking legal conclusions, Accuray is requesting Best Medical to admit statements that are the subject of expert testimony:

- 1.     Admit that Accuray's MultiPlan® treatment planning system does not use the simulated annealing ("SARP") algorithm.
- 2.     Admit that Accuray's MultiPlan® treatment planning system does not use the cost function disclosed in column 13, lines 4-39 of the '283 patent.
- 3.     Admit that simulated annealing is a stochastic algorithm.
- 4.     Admit that Accuray's Simplex optimization algorithm is a linear algorithm.

11

- 5.      Admit that Accuray's Iterative optimization algorithm is a linear algorithm.
- 6.      Admit that Accuray's Sequential optimization algorithm is a linear algorithm.
- 20.     Admit that, in each iteration, the simulated annealing algorithm rejects the cost of the current proposed solution if it is greater than the cost of the previous accepted solutions.
- 21.     Admit that linear algorithms solve optimization problems directly through algebraic solutions.
- 22.     Admit that linear algorithms do not have multiple proposed solutions.
- 23.     Admit that linear optimization algorithms do not proceed iteratively from one proposed solution to another.
- 25.     Admit that linear algorithms solve optimization problems by performing a series of algebraic equations.
- 26.     Admit that linear algorithms solve optimization problems by performing a series of matrix operations.
- 27.     Admit that the performance of matrix operations by linear algorithms results in exact solutions.
- 28.     Admit that Accuray's Sequential optimization algorithm uses matrix algebra to reach an optimal solution.
- 29.     Admit that linear algorithms do not propose intermediate solutions.
- 32.     Admit that the cost function disclosed in column 13, lines 4-39 of the '283 patent is a non-linear cost function.
- 33.     Admit that the cost function disclosed in column 13, lines 4-39 of the '283 patent is a non-linear cost functions.
- 34.     Admit that linear optimization algorithms do not work with the cost function disclosed in column 13, lines 4-39 of the '283 patent.
- 35.     Admit that stochastic algorithms are used with non-linear cost functions because they can escape local minima and find a global minimum.
- 39.     Admit that using a linear optimization algorithm results in a different optimized proposed radiation beam arrangement than using a simulated annealing optimization algorithm.
- 40.     Admit that the cost function of column 13, lines 4-39 of the '283 patent uses CDVH curves divided into zones, and the zones are weighted differentially.
- 43.     Admit that the cost function of Accuray's Simplex algorithm does not use CDVH curves divided into zones and weighted differentially.
- 44.     Admit that the cost function of Accuray's Simplex algorithm does not use CDVH curves divided into zones and weighted differentially.

- 45.   Admit that the cost function of Accuray's Sequential optimization algorithm does not use CDVH curves divided into zones and weighted differentially.
- 46.   Admit that the "penalties" described on ACC0013594, ACC0005497, ACC0015312, ACC0003180 and ACC0014884 are not cost functions.
- 47.   Admit that the "Vi" described on ACC0013594, ACC0005497, ACC0015312, ACC0003180 and ACC0014884 is not partial volume data.
- 48.   Admit that the beam reduction tool described at ACC0013861-0013862 is post-processing tool.
- 49.   Admit that the beam reduction tool described at ACC0013861-0013862 is user selected.
- 53.   Admit that optimization algorithms are used to find the set of beam weights for each beam that produces the best distribution for the patient.
- 54.   Admit that ACC0013888 (The Software Design Description 2011) pertains to Sequential Optimization, not Simplex Optimization.
- 56.   Admit that in a gantry-based system, the number of beams is fixed.
- 98.   Admit that the Corvus treatment planning system does not work with the CyberKnife® system.
- 100.   Admit that the Corvus treatment planning system and the MultiPlan® treatment planning system are not interchangeable.
- 106.   Admit that the '283 patent does not disclose optimization of beam geometry.

54.   Accordingly, Best Medical should not be required to respond to Requests 1-6, 20-23, 25-29, 32-35, 39, 40, 43-49, 53, 54, 56, 98, 100 and 106.

WHEREFORE, based upon the above, Best Medical respectfully requests that this Court enter an Order striking certain Requests of Accuray's 106 Requests for Admissions.  In addition, and in the alternative, Best Medical requests that it be granted an additional 30 days to respond to these requests, after the parties have concluded the mandatory alternative dispute resolution required under the local rules, including the currently scheduled May 16, 2013 mediation.

Respectfully submitted,

Dated:  April 4, 2013                              By:  **/s/ Eric G. Soller**

Eric G. Soller, Esq.
Alan G. Towner, Esq.
PIETRAGALLO, BOSICK & GORDON LLP
38th Floor, One Oxford Centre
Pittsburgh, PA  15219
egs@pietragallo.com
agt@pietragallo.com

*Counsel for Plaintiff, Best Medical International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Madison C. Jellins, Esq.
Janice A. Christensen, Esq.
Jellins Christensen LLP
228 Hamilton Avenue
Third Floor
Palo Alto, CA 94301
Email: mjellins@jciplaw.com
Email: jchristensen@ jciplaw.com

Kirsten R. Rydstrom, Esq.
Reed Smith LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA  15222
Email: krydstrom@reedsmith.com

By: *<u>/s/ Eric G. Soller</u>*

*Counsel for Plaintiff, Best Medical International, Inc.*

17