IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BEST MEDICAL INTERNATIONAL, INC., )
         Plaintiff, )
)
v )  2:10-cv-1043
)
ACCURAY, INC., *a corporation*, )
         Defendant. )
)

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are DEFENDANT ACCURAY'S EXPEDITED MOTION TO STRIKE BMI'S INFRINGEMENT CONTENTIONS (ECF No. 202), with exhibits and brief in support. Plaintiff Best Medical International, Inc. ("BMI") filed a brief in opposition to the motion and an attached exhibit under seal. Accuray filed a reply brief and the motion is ripe for disposition. The Court notes that the stay of this case has been lifted upon the entry of appearance by new counsel on behalf of BMI.

Factual and Procedural Background

This is a technologically and procedurally complex patent infringement case which BMI initiated on August 6, 2010. Only Count 9 of the Amended Complaint (alleging direct infringement of Claim 25 of the '283 Patent) remains before the Court. Claim 25 of the '283 Patent provides, in relevant part:

> An apparatus for determining an **optimized** radiation beam arrangement for applying radiation to a tumor target volume while minimizing radiation of a structure volume in a patient, comprising: [. . .] the computer further adapted to incorporate a **cost function** at each **iteration** to approach correspondence of **partial volume data** associated with the proposed radiation beam arrangement to **partial volume data** associated with a pre-determined desired dose prescription...

(Emphasis added.)

Claim construction has been completed. As relevant to the instant motion, the Court concluded at the *Markman* stage that: (1) Claim 25 is not limited to the Simulated Annealing Optimization Algorithm ("SARP"); (2) the term "Cost Function" is not limited to the cost function disclosed in the '283 Patent and does not mandate the use of the formula described in columns 4 and 13 to the exclusion of all other possible optimization formulas; and (3) recognized that issues of indefiniteness, invalidity and/or infringement would be resolved at a later date. The claim construction largely adopted the contentions advocated by BMI and rejected those of Accuray. The terms "optimized," "partial volume data" and "iteration" were not disputed, and therefore, were not interpreted by the Court. Discovery is essentially complete, except for sixteen depositions. The next phase of the litigation will encompass expert disclosures and expert discovery.

There have been numerous disputes throughout this litigation regarding BMI's Infringement Contentions. By initiating a patent case in this Court, BMI has necessarily been on notice that the Local Rules of Practice for Patent Cases before the United States District Court for the Western District of Pennsylvania ("LPR") are applicable, including the disclosure requirements set forth in LPR 3.2. Unfortunately, early in the litigation BMI repeatedly failed to comply with its disclosure obligations. As a result, the Court granted several motions to compel filed by Accuray, and ordered BMI to pay counsel fees to Accuray as a sanction.[1] On June 30, 2011, the Court observed that BMI's belated and apparent lackadaisical approach to its disclosure obligations under the Local Patent Rules was unacceptable and ordered BMI to

---

[1] The Court is well-aware that such conduct occurred while BMI's in-house attorney, Brit Groom, was counsel of record.

"strictly comply with all of its obligations under the Local Patent Rules throughout the remainder of this case."

BMI served its initial Infringement Contentions on June 13, 2011, the deadline set forth in the Case Management Order. Accuray promptly notified BMI that, in its view, the Infringement Contentions were deficient in numerous respects and requested supplementation. On July 14, 2011, BMI served an amended infringement chart. On July 18, 2011, Accuray notified BMI that the amendment failed to cure the alleged deficiencies it had identified in the original chart. By Order dated August 19, 2011, the Court held that BMI's infringement contentions lacked the requisite specificity and explained that BMI was not entitled to engage in willful ignorance of Accuray's initial disclosures in order to evade its duty of specificity under LPR 3.2.

BMI has made numerous revisions to its infringement contentions. On October 24, 2011, BMI dramatically revamped its Infringement Contentions by creation of a "Supplemental Claim Chart." However, disputes continued and culminated in another motion by Accuray to strike BMI's infringement contentions (ECF No. 117). As relevant to the instant motion, Accuray asked the Court to strike BMI's contentions with respect to Claim 25 based on the "Simplex Optimization Algorithm," the "Iterative Optimization Algorithm," and the "Sequential Optimization Algorithm." Among other arguments, Accuray contended that BMI cited to documents which reference _Sequential_ Optimization as support for infringement contentions that are based on _Simplex_ Optimization. By Order of December 19, 2011, the Court denied Accuray's motion and ruled that BMI's infringement contentions were sufficiently specific for Accuray to prepare its responsive non-infringement contentions.

On July 13, 2013, the Court struck BMI's infringement contentions regarding the doctrine of equivalents. In all, BMI has provided ten versions of its infringement contentions. The most recent version is set forth in BMI's Third Amended Supplemental Claim Chart dated November 27, 2013 ("Claim Chart").

Discussion

Accuray moves to strike BMI's Infringement Contentions regarding: (1) Simplex Optimization and Iterative Optimization; and (2) Sequential Optimization for versions of the MultiPlan prior to version 4.5. Specifically, Accuray contends that: (1) the documentary citations in the Claim Chart pertain only to Sequential Optimization and thus cannot support BMI's claims regarding the Simplex Optimization or Iterative Optimization algorithms; and (2) the citations refer only to version 4.5 and later of the MultiPlan and thus BMI has not supported its claims as to earlier versions of the MultiPlan. Accuray further seeks to deny BMI an opportunity for leave to amend its contentions.

Accuray contends that BMI has had sufficient information to provide more-detailed contentions, including the official Design History Files for all versions of the MultiPlan, but has employed a "shifting sands" approach as a smokescreen to avoid dismissal of this case. To wit, Accuray contends that the broad definition of the term "Cost Function" which was advocated by BMI and adopted by the Court at the *Markman* stage renders Claim 25 invalid due to the prior art; and in response, BMI has changed its theory of the case to contend that Claim 25 covers only cost functions that use "partial volume data."

Accuray contends that BMI is using contradictory definitions of the term "partial volume data" for invalidity and infringement. As relevant to the pending motion, Accuray argues that

4

BMI's Claim Chart fails to show how Simplex Optimization or Iterative Optimization algorithms use "partial volume data."

BMI contends that Accuray's motion is without merit and constitutes a premature motion for summary judgment. In BMI's view, its infringement contentions are more-than-sufficiently detailed and Accuray merely disagrees on the substantive issue of whether its CyberKnife product infringes the '283 Patent. BMI posits that it has not made any new infringement contentions and has added <u>more</u> detail to the contentions which this Court held to be sufficient in December 2011.

BMI denies that there is any inconsistency in its definition of "partial volume data" – and, because the term was not construed in the *Markman* hearing, it is understood to have its ordinary and customary meaning. According to BMI, the Claim Chart describes, at length, how the Simplex, Iterative and Sequential Optimization Algorithms "read on" to this element. BMI points out that some of its supplementation has been the result of more than 100,000 pages of documents first provided to it by Accuray in July and September 2013. BMI also contends that it has sufficiently identified the different versions of the CyberKnife which allegedly infringe the '283 Patent. Finally, BMI points out that the extreme sanction requested by Accuray (i.e., striking the infringement contentions without leave to amend) is not warranted because there has been no bad faith or prejudice. BMI represents its willingness and ability to further amend the Claims Chart if the Court deems it necessary.

The Local Patent Rules are designed to create a streamlined process that hastens resolution of the dispute on the merits by providing structure to discovery to enable the parties to more effectively address claim construction and resolution of the dispute. *Shared Memory Graphics LLC v. Apple, Inc.*, 2010 WL 5477477 *2 (N.D. Cal. 2010) (citations omitted). The

LPRs require a party claiming infringement to "crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Id*. Further, a plaintiff must "include in its infringement contentions all facts known to it, including those discovered in its pre-filing inquiry." *Id*. The text of LPR 3.2 requires that a plaintiff's infringement contentions be "as specific as possible."

A plaintiff must set forth its theories of infringement "with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves." *DataTreasury Corp. v. Wells Fargo & Co*., 2010 WL 3912486 *3 (E.D. Tex. 2010). On the other hand, the initial Infringement Contentions are to be filed, according to the plain text of LPR 3.2, "not later than thirty (30) calendar days after the Initial Scheduling Conference," which is an early step of the process. LPR 3.7 explicitly permits amendments to the Infringement Contentions if they are "timely," "asserted in good faith," and done "without purpose of delay."

The actual crux of the dispute between the parties is the level of specificity required in the Infringement Contentions. In *Renesas Technology Corp. v. Nanya Technology Corp*., 2004 WL 2600466 (N.D. Cal. 2004), the Court explained that the parallel local patent rule in that court "does not require [plaintiff] to produce evidence of infringement or to set forth ironclad and irrefutable claim constructions, nor does it require a plaintiff to provide support for its contentions." *Id*. (citing *Network Caching Technology Corp. v. Novell, Inc*., 2003 WL 21699799 *4 (N.D. Cal. Mar, 21, 2003) (*Network Caching II* )). Instead, a party need only set forth "particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement" beyond the claim language itself. *Id*. In other words, the Infringement

Contentions need not be perfect and there is "no requirement that [plaintiff] thoroughly present and successfully defend its theories of infringement in the confines of a [claim] chart"). *Id*.

On the other hand, there is an expectation that the Plaintiff must provide significant detail and specificity and several courts have struck insufficient infringement contentions. In *Shared Memory Graphics LLC v. Apple Inc.*, 2011 WL 3878388 (N.D. Cal. 2011), the Court held that the level of specificity "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Id*. (quoting *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)). The infringement contentions "must be sufficient to raise a 'reasonable inference that all accused products infringe." *Id*. (quoting *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002)). Similarly, the Court in *Infineon Technologies v. Volterra Semiconductor*, 2012 WL 4808445 (N.D. Cal. 2012), interpreted the parallel local patent rule as follows:

> Rule 3–1 requires a patent plaintiff to forthrightly set forth the specifics of its infringement contention. Plaintiff's "contingent" formulation obfuscates the exact substance of Plaintiff's allegations and does not " 'crystallize [Plaintiff's] theories of the case,' " as Rule 3–1 commands. Under Rule 3–1(c), Plaintiff may not craft its infringement contentions "without specifically identifying what in the device satisfies the limitation." It must "identify[ ] specifically where each limitation of each asserted claim is found within" the [accused product], which necessitates a level of detail that reverse engineering or its equivalent would provide.

*Id*. (citations omitted). *Accord GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651 at *2 (N.D. Cal. 2013) (purpose of the patent rule is to be "nit picky"). The Court will now endeavor to apply these principles to the hotly-contested circumstances of this litigation, in which BMI has resisted specificity and Accuray has pressed for excruciating detail.

The Court concludes that BMI has not sufficiently supported its Infringement Contentions regarding the Simplex Optimization and Iterative Optimization algorithms. The

7

documents cited in BMI's Claim Chart refer explicitly only to the Sequential Optimization algorithm. These citations do not sufficiently support BMI's contentions regarding the Simplex and Iterative algorithms. It is true that the "cost function" in Claim 25 of the '283 Patent is not limited to any one computational method, and the Court rejected a similar effort in 2011 to strike BMI's contentions regarding the Iterative and Simplex algorithms. Nevertheless, at this stage of the litigation, BMI has received substantial additional information, including Accuray's full Design History Files, and therefore, greater specificity is required. In order for BMI to create an inference that it has a "reasonable chance of proving infringement" regarding the Iterative and Simplex optimization algorithms, it cannot merely contend that various documents "on their face, are not limited to Sequential Optimization." (*See* BMI Brief, ECF No. 208 at 16-18.) Rather, BMI must articulate some actual basis to infer that the Iterative and Simplex optimization algorithms infringe its patent. In particular, the Infringement Contentions must be sufficient to support the inference that a person skilled in the art would understand that Simplex Optimization and Iterative Optimization use "partial volume data" as described in Claim 25 of the '283 Patent.[2]

The Court further concludes that BMI has failed to specify how versions of the CyberKnife prior to version 4.5 infringe the '283 patent. BMI conclusorily contends that it has cited to documents both before and after version 4.5 and that Accuray's argument is based on presentation rather than substance. However, BMI has failed to cite any such documents. From

---

[2] In its reply brief, Accuray posits the following alleged Hobson's choice: if BMI defines "partial volume data" as "dose constraints," then the '283 Patent will be invalid based on prior art; but, if BMI defines "partial volume data" as "dose volume constraints," "dose volume goals," or "dose volume optimization" then its Infringement Contentions as to Simplex Optimization and Iterative Optimization must be stricken because those algorithms do not use the defined components.

its independent review of the record, the Court finds that BMI did not specifically identify whether the Sequential Optimization algorithm used in the Accuray products prior to version 4.5 utilized "partial volume data." As noted above, the case law requires a plaintiff to specifically identify each accused infringing product.

Leave to Amend

Accuray's request that the Court deny BMI leave to amend is not well-taken. It is readily apparent that <u>both</u> sides in this case have taken contentious, adversarial positions. BMI has engaged in lengthy, repeated efforts to revise and expand its Infringement Contentions to address at least some of Accuray's demands. Further, BMI has represented its ability to provide greater specificity. It will be afforded an opportunity to do so.

In accordance with the foregoing, DEFENDANT ACCURAY'S EXPEDITED MOTION TO STRIKE BMI'S INFRINGEMENT CONTENTIONS (ECF No. 202) will be **GRANTED IN PART**. BMI shall have leave to serve an amended Claim Chart on or before April 21, 2014.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEST MEDICAL INTERNATIONAL, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | 2:10-cv-1043 |
| | ) | |
| ACCURAY, INC., *a corporation*, | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 31st day of March, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that:

DEFENDANT ACCURAY'S EXPEDITED MOTION TO STRIKE BMI'S INFRINGEMENT CONTENTIONS (ECF No. 202) is **GRANTED IN PART** as hereinabove set forth. BMI shall have leave to serve an amended Claim Chart on or before April 21, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:

**Anthony H. Son**
Email: ason@wileyrein.com
**Ryan M. Corbett**
Email: rcorbett@wileyrein.com
**Scott A. Felder**
Email: sfelder@wileyrein.com
**Karin Hessler**
Email: khessler@wileyrein.com
**Lucy M. Stark**
Email: lstark@wileyrein.com
**Matthew J. Dowd**
Email: mdowd@wileyrein.com

**Kirsten R. Rydstrom, Esquire**
Email: krydstrom@reedsmith.com
**John W. McCauley , IV**
Email: jmccauley@reedsmith.com
**David T. Pollock**
Email: DPOLLOCK@REEDSMITH.COM

**Janice A. Christensen, Esquire**
Email: jchristensen@jciplaw.com
**Madison C. Jellins, Esquire**
Email: mjellins@jciplaw.com